Mary K. HAEN, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF HEALTH & SOCIAL
SERVICES, Respondent.

Court of Appeals

*No. 88-1726. Submitted on briefs February 23, 1989.—Decided
April 26, 1989.*

(Also reported in 440 N.W.2d 835.)

On behalf of the petitioner-appellant the cause was submitted on the briefs of *David R. Knaapen* of *CHASE, OLSEN, KLOET & GUNDERSON,* of Sheboygan.

On behalf of the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Donald P. Johns,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Sundby, J.

BROWN, P.J.   The issues in this appeal examine the Wisconsin Department of Health and Social Services' determination that Mary K. Haen was no longer able to receive medical assistance benefits during her stay in a nursing home. The department decided that Mrs. Haen's home was no longer an exempt asset. We agree and affirm after addressing each issue seriatim.

At the time this appeal was commenced, Mary K. Haen was a ninety-eight-year-old woman who still resided at the nursing home. She had been there since October, 1983. She has since died. Mrs. Haen had received medical assistance benefits since March 1, 1984. On February 9, 1987, the department reviewed the file and determined that there was no expectation of her ever returning to her home. The department therefore concluded that the home was not an exempt asset because it was no longer homestead property. A hearing examiner upheld the determination as did the trial court. Mrs. Haen appealed. Though she is now deceased, her action continues pursuant to sec. 803.10(5), Stats., because the liability for the cost of her care from February 9, 1987, until her death is transferred to her estate.

Mrs. Haen asserted that she no longer owned the property and that it therefore could not be determined to be an asset of hers sufficient to halt medical assistance benefits to her. Approximately thirty years ago, she asked her son, John, to live with her and take care of her for the rest of her life. In exchange, she promised that she would leave him her house upon her death. John accepted the offer. Subsequently, Mrs. Haen drew a will evidencing the agreement. Mrs. Haen argued that because of John's substantial performance over the past thirty years, he was now the *de facto* owner of the property even though Mrs. Haen was not yet deceased; for her part, she owned but a life estate.

The hearing examiner, the trial court, and the department all gave the same response to Mrs. Haen's contention, which we hold is correct. At the time of the February 9, 1987, determination, Mrs. Haen was the owner of the home in fee simple. John Haen did not own the home nor had a life estate been created. The contract between mother and son provided that *upon her death,* John would have the right to ownership of the home so long as he had fulfilled his part of the contract. John cannot presently assert any interest.

Mrs. Haen complained that the result we sustain will mean that even though John substantially performed his part of the bargain, he loses his vested interest in the home. The problem with that rationale is in the time of vesting. The contract expressly provided that John takes upon his mother's death. That is when his right to the property vests. What Mrs. Haen really asked us to do here was to impose a constructive life estate in her and a constructive transfer of the home to her son in order to equitably carry out the wishes of the parties. She reasoned that since John had substantially per-

formed, the contract was complete and John was now the owner of the property; she was a life tenant. There is no case law cited by Mrs. Haen that would allow a court to so hold. The only cases cited are those where, upon a person's death, a claim is made against the estate for money or for title to property based upon substantial performance of an oral contract by the claimant. We do not have that situation here because, at the time the issues were joined, Mrs. Haen was still alive and this was not a claim by a person against the estate. All we have, and all the department, the examiner and the trial court had, is a present owner of the property—Mrs. Haen— with that property probably going to her son following her death. We cannot accept Mrs. Haen's arguments to the contrary.

■

Mrs. Haen then argued that even if the property was no longer a homestead, non-homestead property is still exempt if it is a qualified income-producing property. Mrs. Haen contended that since her son John paid fifty dollars per month rent to her, paid the property taxes, and paid for the maintenance and upkeep of the home, the home was producing income to her. Mrs. Haen then cited Wis. Adm. Code, sec. **HSS 103.06**(5)(b) which states in part that nonhomestead property "need not be counted as an asset if it produces a reasonable amount of income."

The trial court found that even if it were to follow the administrative code rule, no reasonable income was being "generated by the subject property." Alternatively, the trial court held that a conflicting federal regulation takes precedence over the administrative code rule cited by Mrs. Haen and that this federal standard was stricter than the Wisconsin rule. The trial court held that, pursuant to the federal regulation which Wisconsin was

bound to follow, Mrs. Haen's receipt of some income from the home does not mean that the home is a fully exempt asset. On this appeal, the department concentrates on the theme that the federal regulation takes precedence over the state administrative rule in this instance. We agree.

Section 16.54(4), Stats., provides:

> **(4)** Any board, commission or department of the state government designated to administer any such fund, shall, in the administration of such fund, comply with the requirements of the act of congress making such appropriation and with the rules and regulations which may be prescribed by the United States government or by the department of the federal government making such funds available.

As pointed out by the trial court, the department is required to use the regulations established by the federal government. The federal regulations now provide that when non-homestead income-producing property is at issue, then authorities are allowed to permit a $6000 exemption. 20 C.F.R. sec. 416.1222(a).[1] Full exemption is not allowed.

Mrs. Haen responded to the state's argument by arguing that the federal regulation is intended only as a minimum standard which must be met in order to qualify for participation in the program. Mrs. Haen con-

---

[1]Title 20 C.F.R. sec. 416.1222(a) provides in pertinent part:

When deciding the value of property used in a trade or business or nonbusiness income-producing activity, only the individual's equity in the property is counted. We will exclude as essential to self-support up to $6,000 of an individual's equity in income-producing property if it produces a net annual income to the individual of at least 6 percent of the excluded equity. If the individual's equity is greater than $6,000, we count only the amount that exceeds $6,000 toward the allowable resource limit. . ..

cluded that states are free to enact their own standards and regulations as long as they are not more restrictive than the federal regulations.

Mrs. Haen cited no authority for the proposition that 20 C.F.R. sec. 416.1222(a) was designed as a minimum standard. Nor did she cite any authority that Wisconsin could allow for a more liberalized form of exemption for income-producing property.

It is with good reason that she could not find authority for her position. Medical assistance benefits are a product of federal-state cooperative public assistance programs. *See Cudal v. Sunn,* 742 P.2d 352, 355 (Haw. 1987). Noncompliance with federal requirements can result in a cutoff of matching funds. *Id.* Adherence to federal regulations ensures federal dollars will be maximized and costly errors avoided, thus reducing the risk of sanctions by the federal government.[2] We conclude that the state correctly refused to follow its administrative rule in favor of applying the federal regulation.

Finally, Mrs. Haen claimed that a result contrary to her arguments violates the purposes and intentions of the medical assistance program. She claimed that it is not the intent of medical assistance to "penalize [her] for having her own home." Translated, her claim was that elderly people who are placed in a nursing home should not have to forfeit their right to pass on their property by inheritance, contract or otherwise as a condition to receiving medical assistance. Again, there is no authority

[2]The department finds itself in the uncomfortable position of conceding that its own administrative rule is invalid in the face of the federal regulation. It explains that, in this instance, the federal regulations were changed before the state could effect a similar change in the administrative rules, but that the department began conforming to the federal regulation as soon as that regulation became effective, pursuant to sec. 16.54, Stats.

for her argument. While we agree that there may be merit to her contention as a matter of political policy-making, we point out that Congress could easily allow a full exemption for the homesteads of the elderly regardless of whether there is a reasonable prospect of returning home. The legislative branch of government has not seen fit to do so. The judicial branch cannot interfere with that determination. The order of the circuit court is affirmed.

*By the Court.*—Order affirmed.